```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LISA ROBINSON SPRINGER,                      :

                                             :      OPINION AND ORDER
                Plaintiff,                          10 Civ. 6538 (GWG)
                                             :
    -v.-
                                             :

STEPHANIE R. CEDRO et al.,                   :

                Defendants.                  :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lisa Robinson Springer brought this action seeking to recover damages arising from a car accident on May 19, 2010. The trial, held over six days in March 2012, was bifurcated. First, the jury rendered a verdict on liability, finding that Springer and defendant Stephanie Cedro were each partially at fault for the accident. The jury then heard evidence on damages and rendered a verdict awarding Springer nominal damages for both past and future pain and suffering, $30,000 for past medical expenses, and $46,000 for future medical expenses. Springer now moves for a new trial challenging the jury's verdicts as to liability and damages.[1] For the reasons given below, Springer's motion for a new trial is granted to the extent that it

---

[1] See Notice of Motion, filed May 1, 2012 (Docket # 29); Declaration in Support of Motion, filed May 1, 2012 (Docket # 30) ("Frowley Decl."); Memorandum of Law in Support of Motion, filed May 14, 2012 (Docket # 32) ("Pl. Mem."). Defendants opposed the motion. See Memorandum of Law of Defendants in Opposition to the Plaintiff's Motion for a New Trial and for Additur, filed May 29, 2012 (Docket # 46) ("Def. Mem."). Springer submitted a reply. See Plaintiff's Reply Memorandum of Law, filed June 1, 2012 (Docket # 47) ("Reply"). As directed by the Court, see Order, filed July 24, 2012 (Docket # 48) ("July 24 Order"), the parties submitted supplemental memoranda. See Supplemental Memorandum of Law, filed Aug. 14, 2012 (Docket # 50) ("Pl. Supp. Mem."); Supplemental Memorandum of Law of Defendants in Response to the Court's July 24, 2012 Order Following the Plaintiff's Motion for a New Trial and For Additur, filed Aug. 14, 2012 (Docket # 52) ("Def. Supp. Mem.").

seeks a new trial on damages. It is denied in all other respects.

I.      BACKGROUND

     A.      Liability Phase of Trial

At trial, Springer testified that on May 19, 2010, she was seated in the driver's seat of her husband's sport utility vehicle, which had been parked on West 83rd Street in Manhattan, between Columbus Avenue and Amsterdam Avenue. See Transcript, filed May 18, 2012 (Docket ## 33, 35, 37, 39, 41, 43) ("Tr.") at 49–50, 68–71. West 83rd Street is a one-way street with westbound traffic. Tr. 51, 68. Springer testified that she had parked along the right side of the street and had turned the "four-way flashers" of her vehicle on. Tr. 52, 71. The vehicle was in this position for approximately one or two minutes while her husband investigated whether a nearby parking garage was the one they had intended to use. Tr. 52, 54, 85–86.

Shortly after Springer's husband emerged from the parking garage, Springer's vehicle was hit by a car driven by Cedro. Tr. 54–55. The rear passenger door of Cedro's vehicle made contact with the front driver's side of Springer's vehicle. Tr. 54–55. Springer testified at trial that the contact had caused a "violent jolt" to her car. Tr. 54, 79. Shortly after the accident, though, Springer described the impact as a "sideswipe." Tr. 80.[2] At the moment of the collision, Springer was turned around facing her son in the rear passenger seat. Tr. 54. Springer testified that she was speaking with her son at the moment of impact, Tr. 54, and never placed her vehicle in reverse gear, Tr. 65. Springer did not notice Cedro's vehicle until after the accident had occurred. Tr. 93.

---

    [2] During the damages phase of the trial, it was elicited that Springer had previously characterized the impact as a "grazing." Tr. 424–25. Springer also testified that the air bags of her car did not deploy after the collision. Tr. 427

Cedro testified that on the date and time in question, she drove a sedan along West 83rd Street between Columbus and Amsterdam Avenues. Tr. 168–70. Cedro was crossing over Columbus Avenue and headed towards Amsterdam Avenue when she noticed that Springer's car displayed "white reverse lights" and was "backing up down the middle of the street." Tr. 167. Cedro stopped her own car on 83rd Street approximately half-way between the two avenues. Tr. 167–68, 181–82. She stopped "a couple car lengths," or about 30 feet, away from Springer's vehicle. Tr. 181–82. Cedro testified that Springer's vehicle was parallel to a row of parked cars. Tr. 243–46. There was space between Springer's car and the left side of the road, which was sufficiently wide in Cedro's estimation to permit her own car to pass by Springer's. Tr. 169, 170–71. Eventually, Springer's vehicle stopped moving in reverse, Tr. 168–69, and at that point, Cedro felt that it was "safe to try to ease around the vehicle," Tr. 169. As of the time Springer's vehicle stopped moving, there was still sufficient space in Cedro's judgment to permit her to "slowly pass by" Springer's vehicle. Tr. 170–71. Cedro testified that she began to pass by Springer, but around the same time, Springer proceeded to move her vehicle in reverse at a slight angle such that the front of Springer's car faced southwest and the rear of Springer's car moved slightly toward the passenger side, and the two cars thereupon made impact. Tr. 171, 244–45. The front of Cedro's car was turned toward the center of the street at an angle greater than the degree to which Springer's car was turned toward the street center. Tr. 246. Cedro testified that she applied the brakes of her car, but there was "really nothing [she] could do at that point," and the collision occurred. Tr. 171. The two automobiles "were both barely moving" at the moment of impact. Tr. 171; accord Tr. 183 (Springer's vehicle was "barely moving"); Tr. 245 ("We were both going extremely, extremely slowly.").

The jury returned a verdict finding Cedro negligent and apportioning to Cedro 23 percent

of the fault in causing the accident. Tr. 322–23. The jury found Springer negligent as well and apportioned 77 percent of the fault to her. Tr. 323.

      B.      <u>Damages Phase of Trial</u>

Following the jury verdict as to liability, the parties presented evidence regarding the damages Springer sustained. The day after the accident, Springer felt dizzy, nauseous, and as if she was experiencing vertigo. Tr. 388. Springer went to Syosset Hospital and reported these symptoms and her physical pains. Tr. 388–89. X-ray images were taken of Springer at Syosset. Tr. 389–90.

Springer testified that she experienced pain in her head, back, neck, shoulder, legs, and entire right side following the accident. Tr. 387–89, 398. Springer experienced pain predominantly on her right side. Tr. 398. Springer testified that she has suffered a loss of range of motion and that she endures "excruciating pain" when she moves. Tr. 399–400. She cannot exercise anymore as a result and she lacks body strength. Tr. 399–400. As often as twice per day, Springer complains to her son of pain in her back and arms and of headaches. Tr. 487. Springer's husband testified that Springer "is constantly in pain" and "not able to have various movements." Tr. 475. Springer testified that the courtroom's benches were "so painful" and "crippling to sit in" because of their seating angle that she had been "suffering" while sitting in them. Tr. 357. Springer testified that she suffered from depression, Tr. 407; memory loss, Tr. 398, 403–04; and difficulty sleeping, Tr. 412. Springer's husband testified that following the accident, Springer had exhibited less interest in physical intimacy. Tr. 475.

Springer testified that she was subsequently treated by a pain management doctor, who administered certain injections into Springer's neck and shoulder area to relieve pain. Tr. 397–98. She also received acupuncture treatment, attended physical therapy, and was prescribed

4

pain medications and muscle relaxant medication. Tr. 394–95, 400–01.

In June 2010, Springer had MRI images taken of her lower back, and on some date thereafter had an MRI taken of her shoulder and upper spine. Tr. 395–96.

One of plaintiff's experts, Dr. Stuart Kahn, reviewed the MRI images and testified that Springer was then suffering from pinched nerves in the lumbar spine and neck, a superior labral tear of the rotator and glenohumeral joint, shoulder tendinitis, and multiple herniated discs in her spine. Tr. 546–47. Kahn opined on direct examination that these injuries were sustained in the accident with Cedro. Tr. 547, 552–53, 561–63. Kahn found that Springer had a severely limited cervical range of motion: 10 degrees of extension, 15 degrees of flexion, and five degrees of side bending. Tr. 585. Dr. Aric Hausknecht, however, another treating physician of Springer, found that Springer had the following cervical ranges of motion: 35 degrees of left lateral movement, 40 degrees of right lateral movement, 60 degrees of left rotation, 65 degrees of right rotation, 60 degrees of forward flexion, and 60 degrees of extension. Tr. 586–87. Khan testified that normal range of motion for extension of the cervical spine is 50 or 60 degrees, Tr. 541, 587; that normal "side bending" is 20 degrees, Tr. 541; and that a normal range of rotation is 80 or 90 degrees, Tr. 541. Kahn opined that Springer's injuries prevented her from performing ordinary activities of daily living, such as running her household and performing ordinary duties. Tr. 562–63. On cross-examination, Kahn clarified that bulged discs and degenerative changes occur over time, Tr. 579, and acknowledged that he could not determine from the data before him whether Springer's disc herniations resulted from trauma, Tr. 580.

On January 6, 2011, Springer had a hysterectomy. Tr. 403. In April 2011, Springer was first treated by Dr. Joel Redfield, Tr. 648–49, a psychologist, Tr. 651. Springer complained to Redfield of her physical injuries and told him that she had severe memory problems, was easily

distracted, had difficulty following instructions, and had difficulty planning daily activities.  Tr. 627–28.  After performing a series of cognitive and psychological tests on Springer, Tr. 628–29, Redfield opined that Springer sustained a concussion in the car accident with Cedro, Tr. 633, which precipitated a "significant limitation in [Springer's] cognitive abilities," Tr. 638.  Specifically, Springer exhibited substantial impairments to her memory, attention, visual-spatial skills, nonverbal reasoning skills, ability to solve puzzles, and the speed at which she processed information.  Tr. 629–31.  Redfield also diagnosed Springer with traumatically induced dementia.  Tr. 639–40.  On cross-examination, Redfield acknowledged that Dr. Hausknecht, a treating psychologist of Springer, disagreed with Redfield's conclusion that Springer had sustained a concussion.  Tr. 640–41.

Dr. Franklin Porter, Springer's treating psychologist, diagnosed Springer with a mood disorder that could cause significant impairment in routine daily functioning, such as gardening, cooking, and physical intimacy.  Tr. 669–70.  Porter opined that the mood disorder was caused by Springer's car accident and her resulting injuries.  Tr. 672.  Porter, however, found no significant deficits in Springer's attention, concentration, short-term memory, or long-term memory.  Tr. 685.  Porter also concluded that Springer does not have dementia.  Tr. 686.

The defendants presented testimony of Dr. Ashok Anant, a neurosurgeon who examined Springer on June 24, 2011.  Tr. 723, 725.  Anant reported that Springer "was not very forthcoming regarding details of the accident."  Tr. 726.  Initially, Springer also resisted disclosing her medical history to Anant until he indicated that he could not conduct the examination unless she provided him with her medical history.  Tr. 727.  Anant testified that he "found it very difficult to examine [Springer] because [he] couldn't get her to do things that [he]

6

asked her to do." Tr. 730. Springer "would vary the resistance" that she gave to Anant, which made it difficult to assess her true strength. Tr. 730. Anant found that Springer's reflexes were intact, that she could walk, and that she could stand on her tiptoes but would not walk on them. Tr. 730. Anant reported that he endeavored to test Springer's lumbar spinal movement, but Springer exhibited "practically zero movement in her lumbar spine. And that is not possible. Because when patients are asked to bend the first 20 percent of the movement occurs from the hips and not the spine." Tr. 730. With respect to Springer's flexibility, Anant's "general impression was that she did not want to move." Tr. 731. Anant believed that Springer was exaggerating her symptoms. Tr. 737, 739. Anant's impression that Springer exaggerated her limitations was partially informed by the fact that she exhibited significantly more normality in her movement ability when Springer performed other tasks around the office than she did when Anant examined her. Tr. 731. Asked how he could explain Springer's complaints of pain following the accident if she had not suffered a bulged or herniated disk, Dr. Anant opined that Springer may have sprained her neck or lower back. Tr. 810–11. Anant elaborated that "one would expect that to improve by six weeks, two months." Tr. 811. In addition to Anant's in-person examination of Springer, Anant reviewed Springer's MRI reports, X-ray image reports, and the reports and prescriptions of other physicians, Tr. 731–32, 755–62, and concluded that Springer did not sustain a traumatically induced injury to her cervical or lumbar spines, Tr. 735–36.

    The defendants' expert radiologist, Dr. Sheldon Feit, reviewed MRI images of Springer's cervical spine, lumbar spine, and right shoulder; CT scans of Springer's chest and head; and X-ray images of Springer's cervical spine and lumbar spine. Tr. 835. Feit opined that the images

revealed that the abnormalities in Springer's cervical spine were degenerative, not the result of a traumatic incident. Tr. 851. Feit testified that the X-ray images of Springer's lumbar spine did not indicate any abnormality. Tr. 837. Feit also testified that the MRI and X-ray images of Springer's right shoulder did not reveal a rotator cuff tear, Tr. 837–38, although they did reveal some "mild impingement" in the shoulder, Tr. 837–38, 852. Nevertheless, the impingement did not originate from a traumatic event. Tr. 852.

Defendants also played for the jury the videotaped deposition of Dr. Peter L. Varriale. Tr. 826-32. Dr. Varriale, a board-certified orthopedic surgeon, testified that he had reviewed Springer's medical records and conducted a physical examination of her. See Deposition of Peter L. Varriale, dated Feb. 27, 2012 (Docket # 54), at 7, 10, 18. He concluded that Springer displayed "significant malingering" during the physical examination in the sense that "her physical examination did not correlate with other parts of her physical examination" or with her medical records. Id. at 26. He concluded she had resolved her cervical and lumbar strains, and she had resolved her right shoulder strain. Id. at 27–28. He also concluded that she did not require surgery for any injury she sustained in the accident. Id.; accord id. at 37.

The jury deliberated and rendered a verdict, finding that Springer's injury met the "serious injury" threshold under New York law in that she "sustained a medically determined injury or impairment of a nonpermanent nature as a result of the accident [with Cedro] that prevented [Springer] from performing substantially all of the material acts that constituted her usual and customary daily activities for 90 days or more during the 180 days immediately following the accident." Tr. 983. The jury answered "yes" to the question as to whether Springer experienced past pain and suffering because of the accident. Tr. 983. As to the amount

of money that would fairly compensate her for that pain and suffering, the jury award was zero dollars. Tr. 983. The jury answered "no" to the question as to whether Springer would experience future pain and suffering. Tr. 984.

On the issue of compensation for medical expenses, the jury found that the accident caused Springer to sustain past medical expenses and awarded her $30,000 for such expenses. Tr. 984. The jury also found that the accident caused Springer to sustain future medical expenses and awarded her $46,000 for those expenses. Tr. 984.

Following this verdict, plaintiff's counsel objected to inconsistencies he perceived in the jury's verdict, and requested that the Court instruct the jury to correct the inconsistencies. See Tr. 985–87. The Court then instructed the jury to resume deliberating and to take into consideration the fact that it appeared to the Court that its initial damages verdict contained three potential inconsistencies: (1) the award to Springer of zero dollars of compensation appeared inconsistent with its finding that Springer had actually sustained past pain and suffering, (2) the award of past medical expenses in the amount of $30,000 appeared inconsistent with awarding zero dollars for past pain and suffering, and (3) awarding future medical expenses in the amount of $46,000 appeared inconsistent with a finding that the accident did not cause Springer future pain and suffering. Tr. 990–92. The Court advised the jury that "[t]here is a possibility to award nominal damages if you feel that is appropriate, in which case you would award one dollar of damages. But zero dollars damages is not -- is potentially inconsistent with your [other] finding[s]." Tr. 991. The jury returned, making the following changes to its verdict: (1) as to past pain and suffering, it awarded Springer one dollar in damages instead of zero dollars; and (2) as to future damages, it answered "yes" to the question of whether the accident caused

9

Springer future pain and suffering, awarded Springer one dollar in damages for that suffering, and found that this amount was intended to provide compensation over a period of one-and-one-half years. Tr. 998.

Thus, the jury's verdict awarded Springer one dollar for past pain and suffering, one dollar for future pain and suffering, $30,000 for past medical expenses, and $46,000 for future medical expenses. Tr. 998–99.

## II. DISCUSSION

Rule 59 of the Federal Rules of Civil Procedure permits a court, on motion, to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at all in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 146 (2d Cir. 2012) (alteration in original) (citation and internal punctuation marks omitted); accord Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 623–24 (2d Cir. 2001). "[A] new trial may be granted even if there is substantial evidence to support the jury's verdict." Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992) (citing Bevevino v. Saydjari, 574 F.2d 676, 683 (2d Cir. 1978)). Further, the district court is "free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner." Id. (internal quotation marks omitted). However, "trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury."

Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012) (citation and internal punctuation marks omitted). Where "a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." Id. at 418–19.

Springer's motion for retrial raises several objections to the jury's verdicts. We address each below.

### A.     Verdict as to Liability

Springer argues that the jury's attribution of 77 percent fault to Springer is irrational if the jury accepted the theory that defendant's counsel advanced at trial: that Springer had been double-parked at the time of the accident, because that would necessarily mean that Springer's car was not moving at the time of the accident. Pl. Mem. at 3–4. This challenge to the jury's verdict is rejected because there was ample evidence that would have allowed the jury to disbelieve Springer's contentions. The jury could have rationally credited Cedro's testimony that Springer's car was in fact moving at the time of the accident. Tr. 171, 244–45.

Springer also argues that the jury's findings of fault are irrational even if the jury found that Springer was moving at the time of the accident. Pl. Mem. at 4–5. Springer argues that the jury "was given no instructions on the specific duties and responsibilities of a driver operating a vehicle in reverse" and that "[t]o find plaintiff was negligent in backing her vehicle as she allegedly did, the jury would, most respectfully, have needed guidance from the Court as to the legal duties and responsibilities entailed in such alleged operation of a motor vehicle in the City of New York (of which there are a number)." Id. at 4. To the extent this argument is meant to

argue that the Court improperly instructed the jury, it is rejected as Springer requested no instruction on the point she now raises, see Plaintiff's Requests to Charge, dated June 29, 2011 (Docket # 53), and in addition failed to make this objection after the Court informed the parties of the charges it proposed to give to the jury, Tr. 252–60. Thus, Springer waived the argument. See Fed. R. Civ. P. 51(d)(1)(B) (party may not assign error to a failure to give a charge where party either fails to request it or fails to properly object).

In any event, the Court specifically instructed the jury that one of its obligations was to determine whether Springer had negligently operated her motor vehicle at the time of the accident. Tr. 310–11, 313. The Court then defined "negligence" for the jury in the following manner:

> Negligence is a lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.
> . . . .
> [A]ny driver always has a duty to operate her automobile with reasonable care, taking into account the actual and potential dangers existing from weather, road, traffic and other conditions. Each driver is under a duty to maintain a reasonably safe rate of speed; to have her automobile under reasonable control; to keep a proper lookout under the circumstances then existing to see and be aware of what was in her view; and to use reasonable care to avoid an accident.
>
> Also, a driver is charged with the duty to see that which under the facts and circumstances she should have seen by the proper use of her senses, and if you find that either of the drivers did not observe that which was there to be seen you may find that she was negligent in failing to look or not looking carefully.

Tr. 310–12. Springer argues for the first time that an elucidation of "general concepts of negligence . . . may or may not be appropriate to the facts of this particular case." Id. at 4. Yet even now, Springer does not state what specific instruction she contends should have been given.

12

Accordingly, the Court does not find that any error occurred.

Additionally, Springer argues that Cedro had the "last clear chance" to avoid the accident and that therefore "the percentages of liability should have been the reverse of what the jury actually found." Pl. Mem. at 4–5. First, the "last clear chance" doctrine of tort law, which places the entire liability for an accident on a party who had the last clear chance to avoid the accident, is now "obsolete" in New York as it has been superseded by New York's rules on contributory and comparative negligence. Craig Test Boring Co. v. Saudi Arabian Airlines Corp., 138 F. Supp. 2d 553, 558 (S.D.N.Y. 2001) (citing Dominguez v. Manhattan & Bronx Surface Transit Operating Auth., 46 N.Y.2d 528 (1979); Romeo v. DeGennaro, 255 A.D.2d 208, 208 (1st Dep't 1998)). Second, the evidence easily supports a jury finding that Springer was comparatively at substantially greater fault than Cedro. The jury could have inferred that Springer saw Cedro's vehicle but chose to continue moving in reverse notwithstanding the risk that Springer then perceived. Alternatively, the jury may have concluded that Springer failed to take adequate notice of her surroundings before reversing her car. Either way, the jury could have found that Springer seriously disregarded the safety of herself and others.

At the same time, it would have been rational for the jury to conclude that Cedro was to some degree negligent in progressing past Springer, particularly in light of the testimony that Springer's car had started to reverse and that the reverse-direction lights to Springer's car had not turned off. However, the jury might have concluded that the wrongfulness of Cedro's conduct was lessened by the fact that – because Springer's car had stopped reversing – Cedro may have fairly believed that Springer had noticed Cedro's car and would not continue moving until Cedro's vehicle had passed. These potential inference were all reasonable and all available to the jury based on the evidence. Certainly, this is not an "egregious case" where the jury's

13

verdict should be overturned inasmuch as Cedro was a highly credible witness whose testimony about the impact fit far more easily with other evidence in the case, including photographic evidence that depicted only very slight physical damage to Springer's vehicle. Thus, there is no reason to disturb the jury's duly-entered verdict on liability.

Finally, plaintiff argues that the liability award should be set aside because the jury's verdicts, including the liability verdict, show that the jury engaged in an "impermissible compromise." Pl. Mem. at 7–11. Relying most heavily on the allegedly inconsistent and inadequate damage awards, Springer points to case law, id. at 10, cautioning that a new trial on damages alone may not be appropriate where "there is reason to think that the verdict may represent a compromise among jurors with different views on whether defendant was liable or if for some other reason it appears that the error on the damage issue may have affected the determination of liability." Diamond D Enters. USA, Inc. v. Steinsvaag, 979 F.2d 14, 17 (2d Cir. 1992) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2814 (1973)), cert. denied, 508 U.S. 951 (1993). The issue in Diamond D Enterprises USA, Inc., however, was whether a new trial should be ordered on damages where there was a single deliberation regarding both liability and damages. See id. Here, of course, there was a separate verdict on liability, rendered at a time when the jury had received no instruction or even evidence on damages. Thus, there is no possibility that the liability verdict represented a compromise over damages.

In any event, as Diamond D Enterprises USA, Inc. notes, "[a]n inadequate damages award, standing alone, does not indicate a compromise among jurors." Id. at 17 (citation omitted). The fact that the jury here made an apportionment of liability that favored the defendant over plaintiff does not show a compromise given the evidence available that each side

14

bore some responsibility for the accident.  Accordingly, the jury's verdict on liability will not be disturbed.

      B.      Verdict as to Damages

Springer argues that the jury's awards of nominal damages for past and future pain and suffering are inconsistent with the jury's findings that Springer has compensable past and future medical expenses.  See Pl. Mem. at 5–7.

      1.      Waiver

Defendant argues initially that Springer waived this objection.  See Def. Mem. at 14-16.  In fact, Springer specifically requested that the Court instruct the jury that its answers were inconsistent, noting two separate inconsistencies.  First, counsel pointed out that the jury found that the accident proximately caused the plaintiff to sustain past pain and suffering but had also found that the amount of such damages was zero.  Tr. 985–86.  Second, later in the colloquy, counsel noted that there was an inconsistency between the failure to award damages for past and future pain and suffering, while at the same time awarding medical expenses for both past and future pain and suffering.  Tr. 989.

Given that counsel specifically raised the point that the jury verdicts on pain and suffering were inconsistent with the verdicts on medical expenses, and the Court then gave an instruction to the jury asking that it resolve the inconsistency, counsel's conduct was adequate to preserve the inconsistency argument relating to pain and suffering and the medical expenses.  Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 83 (2d Cir. 2006) (requiring only that the court be put "on notice of the inconsistency").  There is no warrant in case law to require that counsel propose that the jury be sent back a second time once they failed to resolve the inconsistent verdicts in accordance with the Court's instruction.

2.    Merits

Where a party alleges that the answers to special interrogatories are inconsistent, the "district court has a duty to reconcile the jury's answers on a special verdict form with any reasonable theory consistent with the evidence, and to attempt to harmonize the answers if possible under a fair reading of those answers." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1311 (2d Cir. 1993) (citation omitted); accord Turley v. Police Dep't of the City of N.Y., 167 F.3d 757, 760 (2d Cir. 1999) ("Before a court may set aside a special verdict as inconsistent and remand the case for a new trial, it must make every attempt 'to reconcile the jury's findings, by exegesis if necessary.'" (quoting Gallick v. Balt. & Ohio R.R., 372 U.S. 108, 119 (1963)). As was noted in McGuire, "if there is any way to view a case that makes the jury's answers to the special verdict form consistent with one another, the court must resolve the answers that way even if the interpretation is strained." Id. (citing Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962)). However, if "the jury's answers cannot be harmonized rationally, the judgment must be vacated and a new trial ordered." Brooks v. Brattleboro Mem'l Hosp., 958 F.2d 525, 530–31 (2d Cir. 1992) (citation and internal quotation marks omitted); accord Stephenson v. Doe, 332 F.3d 68, 79 (2d Cir. 2003) ("If we are unable to harmonize the jury's findings, we must vacate the judgment and order a new trial.") (citation and internal quotation marks omitted).

The verdict is inconsistent on its face in that it finds that plaintiff is entitled to payment in amounts that would cover virtually all past and proposed future medical expenses for which plaintiff provided evidence while at the same time awarding only nominal damages for pain and suffering. Yet, the uncontroverted testimony was that those medical treatments were designed to relieve plaintiff's pain and suffering. Such incompatible factual findings render the verdict

16

inconsistent. See, e.g., Crockett v. Long Island R.R., 65 F.3d 274, 278 (2d Cir. 1995) (requiring new trial where a jury awarded zero dollars for pain and suffering and it was uncontroverted that the surgery for which the jury awarded future medical expenses would be necessary only when the plaintiff's pain increased).

Defendants make various arguments as to why the verdicts are not inconsistent. But the arguments go far beyond "strained" to the realm of the fanciful and illogical. They argue that Springer's treatments might have been "necessary regardless of pain" or that they were somehow "preventive." Def. Mem. at 18. The argument, however, is devoid of citation to any testimony or other evidence in the case. While the jury was certainly free to disbelieve Springer and to credit the testimony of Dr. Varriale, who found Springer to be a malingerer, the evidence was simply undisputed that the past and future treatments were specifically designed to relieve Springer's alleged pain, which was described as being "chronic." E.g. Tr. 561, 672, 676. Defendants have pointed to no testimony that the treatments were necessary regardless of pain or that they were preventive. Nor have they made an argument that such an inference would be reasonable based on evidence actually in the case. The cases cited by defendants are either distinguishable on these grounds or are irrelevant.

For example, defendants rely heavily on Hoyte v. National Railroad Passenger Corp., 2006 WL 2053383 (S.D.N.Y. July 24, 2006), see Def. Supp. Mem. at 4–5, in which the court found consistent a jury's verdict of $3000 in future medical expenses over one year and zero damages for future pain and suffering or lost wages. But the explanations given for the verdict in Hoyte are inapplicable here. For example, Hoyte found that the jury might have believed that the injuries sustained by the plaintiff were likely to require limited treatment while also concluding that the plaintiff would not continue to experience any conscious pain or suffering.

17

Hoyte, 2006 WL 2053383, at *2. Here, by contrast, defendants have offered no scenario under which Springer could be awarded $46,000 in medical expenses for treatments for conditions that did not involve conscious pain and suffering.

Defendants also suggest that Springer's treatments might have resulted from "an excessively aggressive treatment regimen prescribed by her doctors . . . ." Def. Mem. at 18. This argument, however, begs the question of how the allegedly "aggressive" treatment regimen could have actually been necessitated by the accident if there was only nominal pain and suffering. In any event, it does nothing to explain the inconsistency in the awards as to future damages.

Defendants also suggest that the treatment regimen resulted from "preexisting medical conditions." Id. While there was evidence that Springer had such conditions, see, e.g., Tr. 740–43, this argument would only point to a different infirmity in the jury's verdict inasmuch as a verdict compensating plaintiff for treatments of preexisting conditions itself would have violated the Court's instructions, which were to award compensation only for expenses that were proximately caused by the accident.

    3.    Scope of New Trial

Pointing to Brooks, Plaintiff argues that because there was an inconsistent verdict on damages, there should be a new trial on both liability and damages. Pl. Mem. at 10–11 (citing to Brooks, 958 F.2d 525). As noted in that case, "a partial retrial on damages alone is not warranted where 'the question of damages . . . is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.'" Brooks, 958 F.2d at 530–31 (quoting Bohack Corp. v. Iowa Beef Processors, Inc., 715 F.2d 703, 709 (2d Cir.1983)). Such is

not the case here.  Unlike the situation in Brooks, a medical malpractice case where "the effect of the delay in diagnosis and treatment" were "crucial to liability as well as to damages," id. at 531, the liability determination does not bear on damages.  While the parties will presumably testify as to the force of the impact between the vehicles, the issue of who bore responsibility for that impact is of no relevance to the question of damages.  Thus, "[t]he amount of damages sustained by [plaintiff] is conceptually distinct from her comparative negligence in causing the accident in the first place." Crockett, 65 F.3d at 279 (directing retrial on damages only); accord Banks v. Travelers Cos., 180 F.3d 358, 364 (2d Cir. 1999) (where "the error infecting the damages award [was] entirely separable from the underlying finding of liability, . . . retrial of damages alone [was] appropriate").

      Moreover, the liability question was presented to the jury as part of a separate deliberation and before it received any instructions on damages.  Thus, there is no reason at all to believe any improper evaluation of damages occurred during the deliberation on the liability verdict.

      Accordingly, the new trial will be limited to the issue of damages, including the threshold "serious injury" requirement under New York law, which the Court finds to be inextricably intertwined with the damages issue and which was presented to the jury as part of the deliberation on damages.[3]

---

[3] Because the case must be retried, it is unnecessary to reach plaintiff's argument, see Pl. Mem. at 11–16, that the award of one dollar for past and future pain and suffering "deviates materially from what would be reasonable compensation." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 425 (1996).

III.     CONCLUSION

For the foregoing reasons, plaintiff's motion for a new trial (Docket # 29) is granted in part and denied in part. Specifically, a new trial is ordered on damages.

SO ORDERED.

Dated: September 28, 2012
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge